# NIANTIC COAL AND MINING COMPANY
## v.
## LAWRENCE LEONARD.

*Personal Injuries—Action for Damages—Fellow-Servants—Evidence—Questions for Jury.*

In an action by an employe against a mining company to recover damages for an injury, caused by letting the cage down too rapidly, it is *held:* That the plaintiff and an engineer were fellow-servants in the same line of employment; that the questions whether the engineer was incompetent and whether the defendant knew or should have known it, were for the jury; that the evidence was sufficient to warrant the jury in finding that the engineer was not reasonably fit for his service and that the defendant knew, or by ordinary care might have known, of his incompetency; and that there was no substantial error in the instructions.

### [Opinion filed May 24, 1887.]

APPEAL from the Circuit Court of Macon County; the Hon. J. F. HUGHES, Judge, presiding.

Messrs. NELSON & HARNSBARGER and GRAHAM & HAMILTON, for appellant.

Messrs. MITCHELL & MITCHELL, McCARTNEY & CASEY and W. T. CUZZINS, for appellee.

PLEASANTS, P. J.   Leonard was employed as roadsman or tracklayer in appellant's mine, which was operated through a shaft 360 feet deep.   On the 17th of September, 1885, the cage in which, with four others, he was descending, was let down with such rapidity as, by the shock, to maim and disable him for life.   His account of the occurrence is that "the cage commenced at a brisk speed and increased as we went down. When about half way down it seemed to jump from below our feet.   In another instant we were slap against the bottom, and I was crippled."   At the same instant, according to

a witness at the top, the other cage, coming up, crashed against the pulleys, fifty feet above the lower and twenty-five or thirty above the top landing. There was also on the cage at the time a railroad tie, placed there and taken down by direction of the pit boss, for use as a prop; but it does not appear that Leonard was hurt by it. In the opinion of the surgeon who attended him, "the injury was not the result of direct force applied at any particular part of the body, but of the jar or concussion from the fall; that a pitch or wrench of the body produced a derangement or partial dislocation of two of the vertebræ, not sufficient to suppress the spinal cord, but sufficient to suppress some of the departing nerves." He received some severe cuts and bruises, but these were not dangerous. Paralysis of the bladder and bowels was the result of this injury to the nerves, necessitating the use of the catheter and injections. He was a man of splendid physique, about forty-four years of age, over six feet in height, and weighing one hundred and ninety pounds. He suffered much pain, and is permanently disabled.

For the injury he recovered judgment below on a verdict for $4,600 which the court refused to set aside.

The declaration counted on negligence of the company (1) through the engineer, in the manner of letting down the cage; (2) in placing the prop on the cage so let down, contrary to the provision of the act concerning "Miners;" (3) in putting in charge of the engine a person not competent, contrary to another provision of the same act, and (4) upon its common law liability for negligently employing for this service a person whom it knew, or by reasonable care might have known, to be unfit for it.

In reference to each of these alleged causes of action evidence was introduced and instructions were given on both sides.

We hold that upon the undisputed facts appellee and the engineer were fellow-servants in the same line of employment; that by his own act in placing the prop in the cage, though directed by the pit boss, appellee would be barred of a recovery for any injury thereby, if he had received any, of

which there is no evidence; and that, as to the duty of the company in the employment of the engineer, the statute referred to, in its application to this case, and the common law are substantially the same.

This reduces the controversy here, as we think it was reduced before the jury, to the questions whether the engineer was incompetent and whether the company knew or should have known it. These are in an eminent degree questions for a jury.

It appears that the accident under consideration occurred at the very commencement of his service under a second employment by the company in the same capacity. His first term of some months had ended about a year before. Leonard was not there then and had no knowledge of him. There certainly is evidence in the record tending to show his unfitness at that time which might well impress a jury.

Instances of mismanagement of the same kind here complained of were of frequent occurrence. He was well liked as a man by his co-employes, who for that reason refrained to a greater extent than might have been expected, from complaint to his superiors; but as an engineer he did not command their confidence. They expressed their dissatisfaction among themselves; and Mr. Graham, who was superintendent during all that period, was not without information of facts that would reasonably have put him on inquiry into this subject. Whatever may have been the recommendations he brought and however slight the complaints against him, Mr. Graham should have known, if it was reasonably possible to know after months of actual trial, whether he was a suitable person for so responsible a position. The magnitude of the danger to which the men were constantly exposed by reason of the depth of the shaft, and the interests of the company involved, made this his duty. It was shown that from his own observation, as well as from information received, he at one time thought of discharging him. Mr. Mooney was then his clerk, and at the time of the second employment of the engineer had succeeded him as superintendent. It is not improbable, therefore, that he was informed of all that Graham

was. But whether this be so or not is immaterial, since the company must be charged with whatever notice Graham had. Without a more particular reference to the evidence, which would be useless, we think there was enough to warrant the finding that the engineer was not reasonably fit for this service, and that appellant knew, or by ordinary care to ascertain, might have known it when he was re-employed. The instructions given fairly presented the law applicable to the issues and proof, and justified the refusal of those refused. The one intended to be given for the defendant and so marked by the court but inadvertently omitted, was supplied by the one numbered 6, given for defendant, and those numbered 3 and 5, respectively, given for the plaintiff. Besides, the alleged cause of action to which they would relate could hardly have been considered by the jury further than to find that there was no evidence to sustain it.

Whatever errors occurred in the admission or exclusion of evidence were in our judgment fully cured or too trivial to do any harm. The judgment will therefore be affirmed.

*Judgment affirmed.*